RAMIREZ et al. v. MEXICAN S. S. CO.

(District Court, N. D. California. March 2, 1901.)

No. 12,289.

1. SHIPPING—SEAMAN'S CONTRACT—EXECUTION—FRAUD—EVIDENCE.

Shipping articles signed before a consul general described the voyage as "from the port of San Francisco to that of Mazatlan via Todos Santos of the Mexican republic." Libelants, who signed the articles, and were discharged on the discharge of the ship at Mazatlan, contended that the agreement included the return voyage, and they, together with two other seamen on the same ship, testified that the articles were misread by the consul's secretary, before being signed, as including the return voyage. The master of the ship, the consul general, and his secretary testified that the contract was read by the secretary precisely as written. *Held*, that the evidence was insufficient to show fraud in the execution of the articles, and hence libelants were not entitled to recover for the refusal of the master to reship libelants for the return voyage on their refusal to sign new articles.

2. COSTS.

A tender, unless kept good by a deposit in court, will not defeat a recovery for costs.

In Admiralty. Libel for ejection of seamen.

Geo. W. Shell, for libelants.

Edwin T. Cooper and Sheldon G. Kellogg, for respondent.

DE HAVEN, District Judge. This is an action brought by several seamen for the recovery of wages and damages. It is alleged in the libel that on or about November 21, 1900, libelants shipped as seamen on the Mexican steamship Mexico, then in the port of San Francisco, for a voyage from San Francisco, via intermediate ports in the republic of Mexico, to Mazatlan and return to the port of San Francisco; that under such employment they proceeded to Mazatlan, and there, on December 12, 1900, were, against their consent, and in violation of the terms of their contract forcibly ejected from said steamship by her master, whereby each of them sustained damage in the sum of $100. The court is asked to decree the pay-

ment of such damage, and, in addition thereto, a balance alleged to be due libelants for wages. The defendant, in its answer, admits that libelants were employed as seamen on the Mexico, but denies that they shipped for the voyage alleged in the libel; on the contrary, the defendant avers that libelants were employed "to serve as seamen on board said steamship on a voyage from San Francisco to the port of Mazatlan via intermediate ports in the republic of Mexico." The following are conceded facts in the case: On the 4th of December, 1900, libelants shipped as seamen on the Mexican steamship Mexico, under articles signed by them before the consul general of the United States of Mexico in San Francisco, Cal., for a voyage described in the shipping articles as one from the port of San Francisco "to that of Mazatlan via Todos Santos of the Mexican republic." The Mexico left San Francisco on December 5, 1900, and arrived at Mazatlan on the 11th of the same month. The voyage named in the shipping articles was completed by the discharge of the steamship's cargo at Mazatlan on the following day, and libelants were then informed by the master that their term of employment had expired, and that they must quit the steamer, unless they would sign articles for the return voyage to San Francisco at reduced wages. They refused to reship, and insisted that under the contract signed in San Francisco they had shipped as seamen for the round trip from San Francisco to Mazatlan and return. The libelants were also tendered the wages due them, but did not accept the same. They also refused to voluntarily leave the steamer, and were then sent ashore by the master.

It will be seen from the foregoing statement of facts that, if libelants were bound by the shipping articles executed by them, the voyage for which they shipped terminated at Mazatlan, and it was no violation of that contract for the master of the Mexico to compel them to leave the steamer at that port. The question to be determined, then, is this: Were the libelants bound by these shipping articles? These articles contained no unusual stipulations upon the part of the seamen, and the voyage to be performed by them is clearly described. The libelants were competent to enter into such a contract, and are bound by their written agreement, unless they were induced to execute it by reason of fraud or mistake. "It is believed," said Judge Betts in the case of The Triton, 1 Blatchf. & H. 282, Fed. Cas. No. 14,181, "that no case can be produced in which a seaman has been permitted to disregard the written contract, unless he has satisfied the court it was executed through fraud or imposition practiced upon him." This principle of law is not disputed, but the claim of the libelants upon this point is that at the time of signing the articles the secretary of the consul general of Mexico at San Francisco assumed to read the same for their information; that, as read by him, the voyage was represented to be a voyage from San Francisco, via intermediate ports in the republic of Mexico, to Mazatlan and return, and that they signed such articles under the belief that this was the voyage for which they were shipping. The libelants so testified upon the trial, and were corroborated in this by two disinterested witnesses, who were members of the crew of the Mexico upon the voy-

age referred to, and signed the shipping articles at the same time as the libelants. Upon the other hand, the consul general of Mexico, who was present when the shipping articles were signed, his secretary, and the master of the Mexico testified that the contract was read by the secretary to libelants precisely as it is written. Under the rule above stated, the burden of proving that the articles were incorrectly read to them is upon the libelants, and the fact must be established by clear and convincing evidence. The object of reducing a contract to writing is that the writing may stand as a memorial of the agreement which it contains; and one who has signed and delivered such a contract is bound by its written terms, unless he is able to prove to the satisfaction of the court that there is a mistake in the writing, or that his signature was obtained by fraud or mistake. It is not deemed necessary to enter into any discussion of the conflicting evidence in the case. It is clear that, if the secretary of the consul general misread the shipping articles, as claimed by the libelants, he must have done so with the intention of deceiving them as to the voyage for which they were about to ship; and upon careful consideration of all the evidence before me I am not convinced that he practiced such fraud upon them. On the contrary, I believe that he stated the truth, when he testified that he read the articles as written. Libelants were all residents of the city of San Francisco upon December 4, 1900, and some of them had lived in that city, with their families, for many years prior to that date, and the argument was pressed upon the court with great earnestness by their proctor that, in view of such residence, it was in the highest degree improbable that libelants would have shipped for a voyage to terminate at Mazatlan, when the cost for a return passage would exceed the amount of wages to be earned by them under their contract. This argument is by no means conclusive, and loses its force when it is remembered that libelants, if they gave any thought whatever to the matter, may have believed that they would be afforded the opportunity to ship upon the return voyage of the Mexico, and for reasonable wages, or, if not, then upon some other vessel leaving Mazatlan for San Francisco. Certainly, if they so believed, the contract would not have appeared unreasonable to them.

One of the admiralty rules of this court provides:

"A tender inter partes before suit shall be of no avail in defense or in discharge of costs, unless on suit brought, and before answer, plea, or claim filed, the same tender is deposited in the court to abide the order or decree to be made in the matter."

This rule was not complied with by the defendant, and for that reason the libelants are, notwithstanding defendant's prior tender, entitled to costs. Let a decree be entered in favor of the libelants for the respective amounts admitted by the answer to be due them, with costs.