### THE WILLIAM H. CLIFFORD.

(District Court, E. D. Pennsylvania. November 9, 1908.)

#### No. 28.

1. SEAMEN (§ 5*)—CONTRACT OF SERVICE—VALIDITY.

Under Rev. St. § 4504 (U. S. Comp. St. 1901, p. 3063), the master of a vessel making a coastwise voyage between Atlantic ports of the United States may act as shipping commissioner for the purpose of signing his own crew, and the contract so signed is valid and binding.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. § 5; Dec. Dig. § 5.*]

2. SEAMEN (§ 21*)—RIGHT TO WAGES—DESERTION.

Where the shipping articles signed by seamen required them to "load and discharge cargoes," their refusal to assist in discharging in an emergency was a breach of contract, although it was not construed by the ship to require them to do all of such work; and their leaving the ship on the refusal of the master to furnish them food, which order was rescinded after a short time, was desertion which forfeited their right to wages.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. § 101; Dec. Dig. § 21.*]

In Admiralty. Suit by seamen for wages.

Lionel T. Schlesinger, for libelant.
Howard M. Long, for respondent.

J. B. McPHERSON, District Judge. This is an action in rem brought by James MacIntosh and Thomas Williams, each claiming to recover wages as a seaman from the schooner William H. Clifford.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On March 4, 1907, the libelants signed articles with the schooner for a coasting voyage from Philadelphia to Mayport, Fla., and return to a port of discharge north of Cape Hatteras. On March 28th they left the vessel at Mayport, made their way back to Philadelphia, and afterwards brought this action for their wages. The defense is that they deserted the ship, and have therefore lost their right to compensation. Rev. St. § 4596 (U. S. Comp. St. 1901, p. 3113). The articles were not signed before a shipping commissioner, but before the master of the schooner; and in reply to the vessel's defense the libelants take the legal position that the articles were void because the federal statutes were not complied with, and, as a further consequence of this violation of law, that the libelants were expressly permitted by section 4523 (U. S. Comp. St. 1901, p. 3075) to leave the service of the vessel at any time and to recover thereafter the wages agreed upon at the time of shipment. As it seems to me, however, section 4523 does not apply in the present controversy. ·The Clifford was engaged in the coasting trade when the articles were signed, and it has been decided by the Supreme Court that the act of 1872 (Act June 7, 1872, c. 322, § 12, 17 Stat. 264); which is substantially repeated in section 4511 et seq. of the Revised Statutes (U. S. Comp. St. 1901, p. 3069), does not govern the shipment of seamen who are engaged for a voyage coastwise between Atlantic ports of the United States, but that in such a case the owner, consignee, or master may himself perform the duties of a shipping commissioner. United States v. Smith, 95 U. S. 536, 24 L. Ed. 517. Of course, the master of a coasting vessel is not obliged to avail himself of this permission—which will be found in section 4504 of the Revised Statutes (U. S. Comp. St. 1901, p. 3663)—and, if he takes the seamen before a commissioner to sign the articles, the provisions of the statutes concerning shipment of seamen before such an official will then apply (Act Aug. 19, 1890, c. 801, 26 Stat. 320). But when he does take advantage of the permission, the articles cannot be successfully attacked on the ground now relied upon.

Turning, then, to the questions of fact in dispute, the first of these concerns the validity of a clause that the "crew shall load and discharge cargoes," the libelants averring that they are not bound by this provision, because, although one of them could not read at all and the other could not read English, the existence of the clause was not only not made known to them when the articles were signed, but was deliberately concealed by the master. The testimony upon this point is conflicting, but if the rule is borne in mind that such an assault upon a writing by one who has signed it must be supported by clear and convincing evidence (Ramirez v. Steamship Co. [D. C.] 107 Fed. 530), the conclusion can hardly be avoided that the libelants' averments have not been satisfactorily proved. But, while I am therefore of opinion that the libelants knew they were signing articles that contained the clause in question, I also think it clear that the clause was not understood by the ship to impose upon the crew an unqualified obligation to discharge the cargo; for, when the vessel reached Mayport, the master employed a stevedore to un-

load, and the latter set his own men to work, and had been engaged in this business for three days before the situation arose which has given rise to the present dispute. After these three days, for some reason that does not appear, the stevedore was short of men, and in this emergency the master directed the libelants, with the rest of the crew, to help in discharging the cargo. They all refused on the ground that they had not signed for such work, whereupon the master entered their refusal in the log and announced his intention of going to Jacksonville to ask for advice from the United States commissioner. These events took place in the afternoon of March 27th, and there is some dispute concerning what happened further on that day. The libelants contend that, while the master said that the crew might have supper on board and might stay on the vessel if they chose, he declared also that they should not have breakfast or any other food, and gave them the option to accept these conditions or to go ashore. They aver that they were refused breakfast the next morning, and were obliged by hunger to leave the ship. The evidence does not satisfy me that the option of doing without food or of going ashore was offered to the men, but it is no doubt true that breakfast was denied them, and I agree that this was by the master's order, which ought not to have been given. His mistake in this respect was pointed out to him as soon as he consulted the commissioner in Jacksonville, and he telegraphed at once to the mate that food should be furnished. When the telegram reached the ship, however, about 10 or 11 o'clock, the men had already taken their clothes and gone away. Was this conduct desertion on the part of the libelants, or did the master agree in effect that their contract of service should then come to an end? As I think, the libelants must be held to have deserted the ship. Their agreement to discharge the cargo—while it may not have bound them to do all the work, since the practical interpretation of it by the ship apparently modifies its unqualified language to some extent—cannot be wholly disregarded, and it seems to me that it bound them this far, at least, that they ought to have rendered assistance in the emergency that had arisen. Their refusal to do this was not justified, and the master acted with prudence in seeking to be advised concerning his right and duty in a somewhat perplexing situation. He was wrong in refusing to feed the crew while they were allowed to remain on board, but this mistake would have been set right with no more than a slight inconvenience to the men, if they had not acted with precipitation and left the vessel without waiting to hear the result of the master's visit to the commissioner. The dispute was no doubt irritating to both parties, and it is easy to believe that angry feelings were aroused; but, if I am correct in holding that the crew were bound to some extent by their agreement to unload the cargo, they were first in the wrong and persisted in maintaining this attitude. To refuse to perform a duty, and to leave the ship rather than yield, can only be described as desertion, for which sufficient justification is not found in the master's error concerning

their food. The evidence does not establish such a mutual rescission of the articles as the libelants' counsel thinks has been made out.

A decree may be entered dismissing the libel.